## Case No. 16,190.

### UNITED STATES v. ROLAND.

[1 Cal. Law J. 298.]

District Court, N. D. California. 1863.[1]

MEXICAN LAND GRANT — GENUINENESS OF TITULO — EVIDENCE.

[1. Where no map was presented or informes obtained, and the titulo purports to have been issued on the same day that the borrador was drawn, the fact that the description of the land in the former is much more specific than that in the latter is strong evidence adverse to the genuineness of the titulo.]

[1 [Affirmed in 7 Wall. (74 U. S.) 743.]

[2. The fact that the governor's signature to the alleged titulo, testimonio, and order for extension, are in a style rarely, if ever, used by him, and different from his signature affixed to similar documents on the same date, tends to show that such papers are forgeries.]

[3. The fact that the journals of the departmental assembly show that that body was not in session at the date on which the testimonio states that the grant was approved by it is strong evidence that the grant is not genuine.]

[4. Proof that four days after the date of the alleged grant by the governor of eleven leagues he granted another nine leagues to the same persons tends to show that the former grant is not genuine.]

On appeal from the board of land commissioners.

Claim for eleven square leagues at the junction of the San Joaquin and Stanislaus rivers. Rejected, August 4, 1862.

HOFFMAN, District Judge. The claimant has produced, in support of his title, an expediente from the archives. This document contains a petition, marginal order that the title issue, decree of concession, and the borrador or draft of the title to be issued to the party interested. This expediente is found in the archives, and is noted on the indexes of Hartnell and Mr. Carey Jones. The claimant has also produced the title paper alleged to have been delivered to him—a testimonio or certificate of approval by the departmental assembly—and a petition for an extension of time to fulfill the conditions of the grant, with a marginal order of the governor granting the request. It is not pretended that the land was occupied, or any attempt made to perform the conditions of the grant, until September, 1847, when the claimant caused some cattle and horses to be placed upon it.

The claim was rejected by the board.

It is contended, on the part of the United States: (1) That the title paper produced by the party, the testimonio of approval by the departmental assembly, and the petition, and order for the extension of time, are not genuine; and (2) that the grant was abandoned,—the claimant having, four days after its date, asked for and obtained another grant for a different tract of land.

On examining the expediente we are struck by the circumstance that the petition of Roland, the marginal order that the title issue, the decree of concession, and the borrador of the grant are all dated on the same day, May 2d. The approval of the assembly is dated May 4th, and the order for an extension May 5th. No map was presented with the petition—no informes were required or obtained; and the whole proceeding, from its inception to its completion, was consummated within the short space of three days.

It has not been urged on the part of the United States that the mere fact that no informes were asked for, or investigations made, as to the qualifications of the petitioner, the situation of the land, etc., is fatal to the grant; although the decision of the supreme

court in the Case of Cambuston, 20 How. [61 U. S.] 63, might seem to justify the position that the preliminary steps, made requisite by the law of 1824 and the regulations of 1828, must necessarily be taken by the governor to enable him to make the grant. But, at all events, the absence of an important part of such proceedings, and the evident haste, if not recklessness, with which they appear to have been conducted, are fitted to suggest a doubt as to whether the governor was acting in the bona .fide exercise of the powers confided to him by the colonization laws. The land was in a remote wilderness, uninhabited by reason of hostile Indians, so little known that the petitioner could only describe it as eleven leagues on the banks of the rivers Stanislaus and San Joaquin, and was unable to delineate it on a map. No inquiries are made as to his intention or ability to occupy so large a tract; and, within three days of the date of the grant, the governor allows him an indefinite extension of time for its occupation and cultivation. The grant purports to have been made by Pico (as was observed by the supreme court, with respect to the grant to Cambuston) "near the time when the government of the territory passed from his hands; and, indeed, during the heat and struggle of the controversy by which his power was finally overthrown." The grantee seems to have had no special claim upon the bounty of the government, and had already obtained, jointly with another, a grant for four leagues of land. All these circumstances render it difficult to believe that the governor, if he made the grant, was bona fide, exercising the powers confided to him, and fairly and faithfully endeavoring to carry out the policy of the Mexican laws of colonization.

But the objections of the United States to this grant are of a more specific nature:

1. In the borrador or draft found in the expediente, the land is described as "eleven leagues, situated on the banks of the rivers Stanislaus and San Joaquin." The title papers produced by the party direct, in the third condition, "that the measurement of the eleven leagues shall be on the banks of the Stanislaus, of the width of one league, commencing where the two rivers join." The fact that the borrador differs in phraseology from the titulo is not, of itself, conclusive; for slight discrepancies of this kind sometimes occur in cases of undoubted genuineness. But, in this case, the description in the borrador is evidently taken from the petition, and, as no map was presented, or informes obtained, and the grant issued on the same day, the governor had neither time nor means to obtain more accurate information. It is a little singular that the titulo, if drawn at the same time, should be so much more specific in its designation of the tract; and it serves to confirm the theory of the United States that the proceedings recorded in the expediente were stopped, that no titulo was issued, and that the paper produced was subsequently prepar-

ed when the necessity of a more particular description of the land was well understood. The signatures of Pio Pico to the titulo, the testimonio, and the order for an extension, are in a style rarely, if ever, used by him in public documents of that date. Three documents are produced from the archives of undoubted authenticity, dated respectively on the 1st, 2d, and 3d of May, on which Pico's signature appears, exhibiting its uniform and striking characteristics. The claimant himself produces an expediente and titulo of a grant to Arenas and him, dated May 6th. On these documents, as on those presented by the United States, the signature of Pico is in his usual style. In the case of Luco v. U. S. [Case No. 8,594] this court had occasion to investigate at length the evidence furnished by the archives as to the uniformity and peculiarities of Pico's signature. The fact that his signature to the documents in that case differed from those elsewhere found in the archives was considered a strong argument against its genuineness, and the same argument was used and the conclusion adopted by the supreme court. 23 How. [64 U. S.] 541.

2. The claimant has attempted to weaken its force in this case by the production of four documents, on which the signature of Pico is different from his usual style. But the genuineness of none of these documents is proved—one of them is certainly fraudulent, another probably so, and the two others are open to serious doubt. But, even if authentic, they may serve to impair, but do not overthrow the argument relied on by the United States. For, independently of the numerous signatures (more than six hundred) found in the archives, the proofs in this case show that on the very day when Pico is alleged to have signed the documents produced in this case, he was signing similar documents in his usual handwriting.

3. It is shown by the journals of the departmental assembly, that that body was not in session at the date when the testimonio states the grant to have been approved. The testimonio is dated May 4th. It appears by the journals that the earliest session in May was on the 8th. The preceding session was on April 29th, and the minutes of that session were read and approved, as was customary, at the succeeding session of May 8th.

The counsel for the claimant, sensible, no doubt, of the force of this record evidence thus furnished, has caused the journals of the assembly to be searched, to discover discrepancies or omissions which might serve to impair their value as complete and reliable records of the proceedings of that body. But three such have been found. The first is evidently a mere clerical mistake. A minute of the proceedings of May 8th is found erroneously entitled as of April 8th, on which day there was no session. This is shown by the fact that the acta or minute is left incomplete, and another one is found identical in terms, but correctly dated May 8th. It is also

shown by the contents of the minute itself, which commences by a note. that the proceedings of the previous session of April 29th were read and approved. An instance is also found where the proceedings of July 1st were approved at the session of July 3d, without noticing an intermediate extraordinary session on July 2d, which the journals show was held. But the explanation is evident. On recurring to the actas of the session of July 2d, we find that the minutes of the proceedings were read and approved on the same day before adjournment. The minutes of the preceding regular session of July 1st not having been read at this extraordinary session, they were read and approved at the next regular session of July 3d. The only other omission that has been discovered is that of the minutes of the session of April 24th, which the journal shows were read and approved at the session of April 29th. They have probably been lost; but, even in this case, the journal shows that a session was held on that day. In the case at bar the archives not only contained no trace of the supposed session of May 4th, but they show. affirmatively, that no session was, in fact, held on that day,—unless we suppose that the record has been lost and that the minutes of the session were read and approved before its adjournment; a coincidence certainly improbable in the highest degree.

4. But the strongest argument to show that the alleged grant was not issued to Roland is the fact that, on the 6th of May, only four days after its date, Pico granted to Arenas and John Roland nine leagues in the jurisdiction of San Jose Gaudalupe. He had already granted to Roland and Workman four leagues of land. If, then. on May 2d, he granted to him eleven leagues. and, on May 6th he granted to him and another nine leagues, we must suppose the governor to have committed a flagrant violation of the law under which he derived his powers. All of these last grants are claimed to be genuine. and have been presented for confirmation. That of May 6th bears every mark of authenticity. The only hypothesis, therefore, on which we can acquit the governor of a willful departure not only from the spirit but the letter of the colonization laws, is that suggested by the United States, viz.: that the proceedings in relation to the eleven league grant were suspended, the application abandoned, and a petition presented and a grant obtained for another tract of land. We have seen that this hypothesis is confirmed by all the other facts in the case; the discrepancy between the titulo and the borrador, the style of the signatures of Pico and the proof, almost certain. that no session of the assembly was held on the day when the grant is alleged to have been confirmed. Other circumstances, though not so important, significantly point in the same direction. On the very day (May 5th) on which (if the paper be genuine) Roland asked the governor for an extension of time, he presented to the governor a petition for a grant to himself and Arenas, and to one petition he subscribes his name John Roland, to the other John Rowland,—a difference in the mode of spelling his own name not likely to have occurred on two documents written on the same day. The governor, Pio Pico, has been examined at length; but he is unable to recollect any circumstance connected with the grant, or even that it was in fact made. His only reason for believing it to have been made is the fact that the documents bear his signature.

On the whole, my opinion is that the alleged titulo produced, the testimonio, and the order for an extension have been fabricated since their dates, and that the titulo, in all probability, never issued to him, but the proceeding was abandoned in order to obtain a grant in a different part of the country.

The decision of the board, rejecting the claim, must therefore be affirmed.

[Affirmed in 7 Wall. (74 U. S.) 743.]